IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. GOOD,

                                   OPINION AND ORDER

        Plaintiff,

                                    18-cv-461-bbc

    v.

NATHAN ADAMS, GREG CISNEROS AND
CITY OF BELOIT,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Thomas J. Good is proceeding on claims under the Fourth Amendment that City of Beloit police officers Nathan Adams and Greg Cisneros subjected him to a forced and unwanted blood draw in violation of his Fourth Amendment rights. He also contends that the City of Beloit enacted policies or practices that caused the constitutional violation.

The parties' cross motions for summary judgment are before the court. Defendants contend that the blood draw was lawful because plaintiff consented to it and because exigent circumstances justified it. They also contend that they are entitled to qualified immunity and that plaintiff cannot point to any City of Beloit policy or practice that caused any constitutional violation. Dkt. #18. Plaintiff contends that he is entitled to partial summary judgment with respect to liability against defendants Adams and Cisneros. Dkt. #17. Because I conclude that there are genuine disputes of material fact regarding whether plaintiff consented to the blood draw, whether there were exigent circumstances and whether the City of Beloit's policies caused a constitutional violation, I am denying the motions.

1

From the parties' proposed findings of facts and responses, I find the following facts to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

At approximately 2:09 a.m. on December 29, 2014, plaintiff Thomas Good was driving on a street in Beloit, Wisconsin without his headlights illuminated. Defendant Greg Cisneros, a City of Beloit police officer, initiated a traffic stop and approached plaintiff. Cisneros could smell alcohol, suspected that plaintiff was intoxicated and called defendant Officer Nathan Adams for back up. After Adams arrived, plaintiff attempted to complete several field sobriety tests but performed poorly. Defendants arrested plaintiff for operating while intoxicated as a third offense.

Wisconsin's "implied consent" law deems drivers to have consented to breath or blood tests if an officer has reason to believe that they have committed one of several drug- or alcohol-related offenses. Wis. Stat. §§ 343.305(2), (3). Officers seeking to conduct a blood alcohol concentration test must read aloud a statement called "informing the accused," which declares the officers' intent to administer the test and advises drivers of their options and the implications of their choice. Id. § 343.305(4). If a driver's blood alcohol level exceeds the legal limit, the driver's license will be suspended, but if a driver refuses testing, the license will be revoked, the refusal may be used against the driver in court and the driver may face civil forfeiture penalties. Id.

The Beloit Police Department has a breath test machine at the police station that can

be used to test a driver's blood alcohol concentration. However, under an internal policy of the Beloit Police Department, officers that suspect an individual of driving while intoxicated may ask the individual to consent to a blood draw, rather than a breath test, to determine blood alcohol concentration. Blood tests must be performed at a hospital. Because Beloit Memorial Hospital is the closest hospital to the city's police station, Beloit police officers generally take arrested individuals to Beloit Memorial for blood draws, though police officers can take individuals to another hospital if it is more convenient. Some officers take arrested drivers directly to a hospital for a blood draw. However, in this instance, defendants took plaintiff to the police station to complete the citation and other paperwork.

While at the police station, at 3:07 a.m., defendant Adams reviewed the "informing the accused" form with plaintiff. Plaintiff seemed confused and asked Adams to read the form again, which he did. Adams then asked plaintiff if he would submit to a blood draw. Adams did not ask plaintiff if he would submit to a breath test. Plaintiff responded that he would submit to a blood draw only if the draw was performed at a hospital outside of Beloit. Plaintiff stated that he did not trust the Beloit police department or anyone affiliated with Beloit and that he had been "railroaded" by the City of Beloit in the past. Plaintiff asked whether the blood draw could be performed at Mercy Hospital in Janesville, which was about 25 minutes from the Beloit Police Department. (Beloit Memorial Hospital is about 15 minutes from the police station.) When Adams told plaintiff that the blood draw had to take place at Beloit Memorial and that plaintiff did not have a choice in the medical facility where the draw would occur, plaintiff repeated that he was "not refusing" a blood draw, but

3

that the test needed to be completed somewhere other than Beloit Memorial. (The parties dispute whether plaintiff eventually agreed to submit to a blood draw at Beloit Memorial. Defendants say that after they told plaintiff that the blood draw had to take place at Beloit Memorial, he agreed to the draw. But plaintiff says he never agreed to have his blood taken at Beloit Memorial and that he repeatedly conditioned his consent to a blood draw on the draw's not occurring at Beloit Memorial.) Adams eventually marked the "informing the accused" form as "yes," implying that plaintiff had consented to a blood draw to test his blood alcohol concentration. Adams gave plaintiff a copy of the form. (Defendants state that plaintiff "signed" the form, but the form filed with the court shows only Adams's signature. Dkt. #13-1.)

Defendants then placed plaintiff in a squad car and took him to Beloit Memorial Hospital. Plaintiff and defendants did not communicate during the car ride, and plaintiff said nothing more about the blood draw or Beloit Memorial. When they arrived at the hospital, defendants registered plaintiff, retrieved a sealed blood kit and had a phlebotomist paged. At approximately 3:55 a.m., when a phlebotomist arrived to complete the blood draw, plaintiff became angry and stated, "Now we are gonna have a problem." He also stated that he was "not going to give" his blood. Defendants then forcibly removed plaintiff's arm from his jacket and held his arm down while the phlebotomist took a blood sample from him. During the blood draw, plaintiff demanded the name of the phlebotomist and asked whether the forced draw was a violation of his Fourth Amendment rights. The results of the blood draw showed that plaintiff had a blood alcohol concentration of 0.212.

4

Plaintiff was charged with operating while intoxicated as a third offense. Plaintiff filed a motion to suppress the results of the forced blood test. At the suppression hearing, defendants testified that by the time plaintiff refused the blood draw at the hospital, they did not think they could obtain a warrant and perform the blood test within the "three-hour statutory time frame." Defendants explained that they had been trained that in drunk driving cases there is a statutory time frame of three hours in which it is important to test for blood alcohol concentration. Specifically, under Wisconsin law, a blood alcohol concentration test result is automatically admitted into evidence at trial if the test was performed within three hours of the traffic stop. If the test is taken after the three-hour window, the evidence is admissible only if an expert provides testimony establishing the evidentiary usefulness of the test results. Wis. Stat. § 885.235(3). Defendants estimated that obtaining a warrant would have taken one-and-a-half to two hours, because they would have had to complete the warrant paperwork, contact a judge, email a copy of the warrant to the judge, discuss the search warrant, print a copy of the search warrant, return to the hospital, read or give a copy of the search warrant to plaintiff and then request a phlebotomist. However, defendant Cisneros also testified that obtaining a search warrant by telephone could sometimes take as few as 30 to 45 minutes.

Defendants also testified that they thought there were exigent circumstances that justified the forced blood draw based on plaintiff's "withdrawing" his consent after they had already arrived at the hospital. Defendants pointed to a memorandum circulated by the Rock County District Attorney on April 19, 2013. Dkt. #23-3. The memorandum stated

5

that in light of the United States Supreme Court's decision in Missouri v. McNeely, 569 U.S. 141 (2013), officers should get warrants for blood draws. Specifically, the memorandum stated:

> Issue: Should law enforcement officers get warrants for blood draws?
>
> Answer: YES
>
> ***
>
> McNeely has held that **absent other exigent circumstances**, law enforcement MUST obtain a warrant prior to obtaining a forced blood draw . . . .If the defendant who consented later changes his/her mind and refuses at the time of the blood draw, they have most likely created their own exigent circumstances and [the] officer should proceed with forced blood draw and document the amount of time between the stop and the time the defendant changed his mind.

Id. Defendants testified that according to their understanding of the memo, plaintiffs late "withdrawal" of his consent at the hospital created exigent circumstances that justified the forced blood draw. The trial court judge granted plaintiff's motion to suppress the blood test results, concluding that there were no exigent circumstances that justified the warrantless and forced blood draw. (Neither party has argued that the trial court's decision on the suppression motion has preclusive effect in this case.)

In a separate proceeding, plaintiff was charged and found guilty of refusing to submit to a chemical test or blood draw, which resulted in a civil fine.

OPINION

Plaintiff contends that defendants Adams and Cisneros violated his Fourth Amendment rights by forcibly taking his blood without a warrant, consent or exigent

circumstances. Plaintiff also contends that defendant City of Beloit is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), because the city's policies and practices caused the Fourth Amendment violation. Plaintiff has moved for partial summary judgment as to liability on his claim that Adams and Cisneros violated his Fourth Amendment rights. Defendants have moved for summary judgment with respect to all of plaintiffs' claims.

A. Claims against Defendants Adams and Cisneros

It is well-established that the taking of a blood sample or the administration of a breath test to determine an individual's blood alcohol concentration is a "search" within the meaning of the Fourth Amendment. Schmerber v. California, 384 U.S. 757, 767–768 (1966). Whether a search violates the Fourth Amendment depends on whether the search is "reasonable." Riley v. California, 573 U.S. 373, 381–82 (2014). A search violates the Fourth Amendment if it is "unreasonable." Id. See also Brigham City v. Stuart, 547 U.S. 398, 403 (2006) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'").

If the search is performed by a law enforcement official with the purpose of discovering evidence of criminal wrongdoing, "reasonableness generally requires the obtaining of a judicial warrant." Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 653 (1995). See also United States v. Correa, 908 F.3d 208, 218–19 (7th Cir. 2018) ("Warrantless searches are presumptively unreasonable under the Fourth Amendment.'")

(citations omitted). A warrant insures that the inferences to support a search are "drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Riley, 573 U.S. at 402 (citing Johnson v. United States, 333 U.S. 10, 14 (1948)). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." Riley, 573 U.S. at 382.

It is undisputed that defendants did not obtain a warrant before subjecting plaintiff to a forced blood draw against his will. Defendants contend that the forced blood draw was reasonable under two exceptions to the warrant requirement: consent and exigent circumstances.

A search is reasonable if the subject consents. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). However, consent must be voluntary, Birchfield v. North Dakota, 136 S. Ct. 2160, 2186 (2016), and a criminal suspect may limit the scope of consent to a search. United States v. Thurman, 889 F.3d 356, 367–68 (7th Cir. 2018) (citing Florida v. Jimeno, 500 U.S. 248, 252 (1991)). Additionally, the search must remain within the scope of the consent given. United States v. Saucedo, 688 F.3d 863, 865 (7th Cir. 2012). Whether consent is voluntary, the scope of that consent and whether the search was within the scope of the consent are questions of fact to be determined from the totality of the circumstances. Birchfield, 136 S. Ct. at 2173; Saucedo, 688 F.3d at 865. The standard for measuring the scope of consent "is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Jimeno, 500

U.S. at 251. Courts can consider whether the suspect's consent was given "with no limitations or qualifications," United States v. Long, 425 F.3d 482, 486–87 (7th Cir. 2005), and whether his conduct indicated that he "inten[ded] to limit the parameters of his consent." Thurman, 889 F.3d at 368.

In this instance, there are genuine disputes of material fact regarding whether plaintiff consented to have his blood drawn. Under plaintiff's version of events, he never wavered in his opposition to a blood draw at Beloit Memorial Hospital. In contrast, defendants state that although plaintiff initially objected to a blood draw at Beloit Memorial, he eventually relented and agreed to the blood draw after defendants explained that he had no choice in the medical facility where the draw would be performed. Additionally, defendants argue that even if plaintiff never expressly consented to the blood draw at Beloit Memorial, it was reasonable for defendants to conclude that plaintiff had "impliedly" consented based on his stating that he was "not refusing" a blood draw, his accepting a copy of the completed consent form and his failure to object on the drive to the hospital.

Defendants' arguments are not persuasive. Under plaintiff's version of events, "the typical reasonable person" would not have understood that plaintiff was consenting to a blood draw at Beloit Memorial based on "the exchange between [defendants] and [plaintiff]." Jimeno, 500 U.S. at 251. Plaintiff told defendants repeatedly that he did not trust the City of Beloit and that he would not consent to a blood draw at Beloit Memorial, but that he would consent to a blood draw at another facility. Defendants believed, reasonably, that plaintiff had no right to condition or limit his consent based on the facility

9

at which the blood draw would be performed.  However, if a suspect attempts to condition his consent to a search with unreasonable demands, a reasonable officer would conclude that the suspect had not actually consented at all.  For example, if a suspect agreed to permit officers to search his home only if the officers paid him a million dollars and jumped on one foot during the search, no reasonable officer would conclude that the suspect provided actual consent to the search.  In this instance, no reasonable officer would conclude that plaintiff consented to a blood draw at Beloit Memorial by stating that he would consent to a blood draw anywhere but Beloit Memorial.  Therefore, there are genuine factual disputes regarding whether the consent exception to the warrant requirement applies.

Defendants also argue that the blood draw was reasonable under the doctrine of exigent circumstances.  "The exigent circumstances exception allows a warrantless search when an emergency leaves police insufficient time to seek a warrant." Birchfield, 136 S. Ct. at 2173(citing Michigan v. Tyler, 436 U.S. 499, 509 (1978)).  For example, it permits the warrantless entry onto private property when there is a need to provide urgent aid to those inside, when police are in hot pursuit of a fleeing suspect and when police fear the imminent destruction of evidence.  Kentucky v. King, 563 U.S. 452, 460 (2011).  In some circumstances, drunk driving may present an exigency. In Schmerber, 384 U.S. 757, an officer directed hospital personnel to take a blood sample from a driver who was receiving treatment for car crash injuries.  Id. at 758.  The Court concluded that the officer "might reasonably have believed that he was confronted with an emergency" that left no time to seek a warrant because "the percentage of alcohol in the blood begins to diminish shortly

after drinking stops." Id. at 770. Under the specific facts of that case, time had already been lost taking the driver to the hospital and investigating the accident, so the Court found no Fourth Amendment violation even though the warrantless blood draw took place over the driver's objection. Id. at 770–772. See also Mitchell v. Wisconsin, 139 S. Ct. 2525, 2530 (2019) (exigent circumstances likely justify warrantless blood draw if driver is unconscious and cannot perform breath test and there is not enough time for officers to obtain warrant).

However, in Missouri v. McNeely, 569 U.S. 141 (2013), the Supreme Court made it clear that the natural dissipation of alcohol from the bloodstream does not always constitute an exigency justifying the warrantless taking of a blood sample. See also Mitchell, 139 S. Ct. at 2533 ("[T]he fleeting quality of [blood alcohol concentration] evidence alone is not enough."). Instead, "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." McNeely, 569 U.S. at 151.

In this instance, defendants argue that the blood draw was justified by exigent circumstances because, under Wisconsin law, Wis. Stat. § 885.235(3), blood alcohol concentration tests must be conducted within three hours of the traffic stop to be admissible without expert testimony. By the time plaintiff "withdrew" his consent at the hospital, there was only about one hour and 14 minutes remaining in the three-hour statutory time window. According to defendants, by the time plaintiff withdrew his consent, they did not have enough time to obtain a warrant.

Defendants cite no legal authority to support their argument that Wisconsin's

statutory time frame regarding the admissibility of evidence with or without expert testimony is relevant, let alone determinative, of the exigency analysis. But I need not resolve that question now. Because defendants have not proven that plaintiff ever consented to the blood draw at any point, their argument based on exigent circumstances must fail. Under plaintiff's version of events, he refused to consent while he was still at the police station and when there was still plenty of time for defendants to obtain a warrant, give plaintiff a breath test or take plaintiff to a different medical facility to obtain a blood sample. In light of the various options available to defendants, no reasonable jury could conclude that exigent circumstances required defendants to drive plaintiff to Beloit Memorial Hospital and perform a forced blood draw. Thus, defendants are not entitled to summary judgment as to plaintiff's claims against Adams and Cisneros.

Plaintiff is not entitled to summary judgment either. Plaintiff argues that even if the court accepts defendants' version of events and finds that plaintiff consented at the police station and then withdrew his consent at the hospital, the court should conclude that the blood draw was unreasonable and violated his Fourth Amendment rights. Specifically, plaintiff argues that his withdrawal of consent at the hospital did not create exigent circumstances. With more than one hour remaining in the three-hour window, defendants still had time to obtain a warrant, give plaintiff a breath test or drive plaintiff to another hospital for the blood draw. But there are either factual disputes or insufficient evidence regarding how long obtaining a warrant would have taken at that time of night, whether defendants could have driven plaintiff to another hospital and whether Beloit Memorial had

a breath test available. Therefore, I will deny plaintiff's motion for summary judgment as well.

Finally, I conclude that defendants Adams and Cisneros are not entitled to qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). In other words, qualified immunity "shields from liability police officers 'who act in ways they reasonably believe to be lawful.'" Jewett v. Anders, 521 F.3d 818, 822 (7th Cir. 2008) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)). But qualified immunity does not change the rule that facts must be construed in favor of the nonmoving party on a motion for summary judgment. Board v. Farnham, 394 F.3d 469, 476 (7th Cir. 2005). If I construe the facts in plaintiff's favor, then a reasonable jury could find that defendants did not have consent or exigent circumstances that justified the forced blood draw. At the time, it was clearly established that police officers need a warrant to take a blood test unless they meet one of the exceptions to the warrant requirement identified by the Supreme Court. McNeely, 569 U.S. at 151. Because there are too many disputed facts regarding whether one of the exceptions to the warrant requirement was present, defendants are not entitled to qualified immunity.

B. Claim against City of Beloit

Defendants move for summary judgment on plaintiff's claim that the City of Beloit

is liable for the officers' violation of plaintiff's constitutional rights. To succeed on such a claim, plaintiff must prove that the officers' unconstitutional actions were caused by (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." Thomas v. Cook County Sheriff's Department, 604 F.3d 293, 303 (7th Cir. 2010) (citing Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978)). In this instance, plaintiff contends that he would have a viable Monell claim if a jury concludes that (1) plaintiff consented and then later withdrew his consent at the hospital; (2) the officers still had time to obtain a blood or breath sample or a warrant; but (3) the officers chose not to do so because City policy was to obtain blood samples; and (4) the City adopted as policy the 2013 memo circulated by the Rock County District Attorney stating that an individual who consents and then withdraws consent likely has created exigent circumstances. Defendants have developed no argument as to why they are entitled to summary judgment on plaintiff's Monell claim when it is framed in this way. Therefore, I will deny defendants' motion for summary judgment as to plaintiff's Monell claim.

### C. Punitive Damages

Finally, I will deny defendants' request for dismissal of plaintiff's claim for punitive damages. Punitive damages may be available if plaintiff is able to prove that defendants were lying about plaintiff's consenting to the blood draw and about the time it would take to

obtain a warrant. Because there are genuine factual disputes about these issues, it is premature to decide whether punitive damages are available. Defendants may renew their argument regarding punitive damages after plaintiff presents all of his evidence at trial.

ORDER

IT IS ORDERED that

1. Plaintiff Thomas J. Good's motion for partial summary judgment, dkt. #14, is DENIED.

2. Defendants' motion for summary judgment, dkt. #18, is DENIED.

Entered this 18th day of July, 2019.

BY THE COURT:
/s/

_____
BARBARA B. CRABB
District Judge